**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**J.B. HUNT TRANSPORT, INC.**                                                                 **PLAINTIFF**

**v.**                                          **Case No. 5:26-cv-05053-DCF**

**HOUSTON CASUALTY COMPANY;**
**CHAUCER INSURANCE COMPANY DAC;**
**AND LLOYD'S SYNDICATE CHAUCER 1084**                          **DEFENDANTS**

## MEMORANDUM IN SUPPORT OF DEFENDANTS, HOUSTON CASUALTY COMPANY, CHAUCER INSURANCE COMPANY DAC AND LLOYD'S SYNDICATE CHAUCER 1084'S, MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY

Defendants Houston Casualty Company, Chaucer Insurance Company DAC, and Lloyd's Syndicate Chaucer 1084 (collectively referred to as "Defendants" or "Underwriters" ) submit this memorandum in support of their motion to dismiss or, in the alternative, to stay the complaint brought by Plaintiff J.B. Hunt Transport Inc. ("J.B. Hunt" or the "Assured") seeking declaratory judgment under Logistics Operators Policy: 38675622AA (effective December 31, 2022 – December 31, 2023) (the "Policy").

### PRELIMINARY STATEMENT

J.B. Hunt asks this Court to determine Underwriters' obligation to pay under an indemnity-only insurance policy while the predicate liability question remains wholly unresolved (and expressly stayed) in another federal court. In the United States District Court for the District of Arizona, J.B. Hunt successfully moved to stay all proceedings in the underlying tort litigation pending the United States Supreme Court's forthcoming decision in *Montgomery v. Caribe Transport II, LLC*, 146 S. Ct. 79 (2025), acknowledging that plaintiffs' broker-negligence claim may be extinguished in its entirety, significantly changing the face of J.B. Hunt's potential liability,

dependent upon the outcome. *Chrystal Gee et al. v. J.B. Hunt Transport Inc. et al.*, No. 3:24-cv-8064-SMM, Doc. 167 at 3 (D. Ariz. Jan. 20, 2026). The Arizona court entered the requested stay. *Id.*, Doc. 176 at 3 (D. Ariz. Feb. 9, 2026). Having convinced the Arizona court that consideration of the merits must wait, J.B. Hunt now asks this Court to decide a contingent coverage question, one that hinges on liability that has yet to be determined and may, in fact, never exist.

This Court should not be forced to adjudicate, nor should Underwriters be forced to litigate, potential insurance obligations under the Policy while liability itself remains unresolved and stayed in another federal court. Under the six-factor test set forth in *Scottsdale Insurance Co. v. Detco Industries, Inc.*, 426 F.3d 994, 998 (8th Cir. 2005), and applied by this Court in *Safeco Insurance Co. of America v. Dooms*, No. 5:21-CV-05034, 2021 WL 2462281 (W.D. Ark. June 16, 2021), the Court should exercise its discretion to decline declaratory jurisdiction. For these reasons, and those set forth below, this action should be dismissed without prejudice, or at a minimum, stayed pending the outcome of the underlying tort case.

**BACKGROUND**

**I**. **The Underlying Dispute**

This action arises from an automobile accident that occurred on October 10, 2023, near Kayenta, Arizona, and a subsequent personal injury and wrongful death lawsuit filed against J.B. Hunt in the United States District Court for the District of Arizona (the "Underlying Action"). *See Chrystal Gee et al. v. J.B. Hunt Transport Inc. et al.*, No. 3:24-cv-8064-SMM (D. Ariz.).

In the Underlying Action, the plaintiffs allege that a driver employed by Borderlanders, Inc. ("Borderlanders"), an outsourced motor carrier retained by J.B. Hunt, negligently operated a tractor-trailer that collided head-on with a vehicle carrying a family of five, killing two adults and seriously injuring three minor children. Doc. 3 at 67-68 (¶¶ 25–29). The plaintiffs assert two

theories of liability against J.B. Hunt.  First, they allege that J.B. Hunt is vicariously liable as a motor carrier and statutory employer of the driver under federal regulations.  Doc. 3 at 69 (¶ 35).  Second, they allege that J.B. Hunt is independently liable for negligent hiring, supervision, entrustment, and retention of Borderlanders as an outsourced carrier.  *Id.* at 70 (¶ 38).

Critically, whether J.B. Hunt acted as a transportation broker or as a motor carrier in connection with the shipment at issue is a contested factual question that remains unresolved in the Underlying Action.  *See Chrystal Gee et al. v. J.B. Hunt Transport Inc. et al.*, No. 3:24-cv-8064-SMM, Doc. 176 at 3 (D. Ariz. Feb. 9, 2026).  The Arizona court denied J.B. Hunt's motion to dismiss, finding that "plaintiffs have plausibly alleged that JB Hunt acted as a motor carrier, not a broker, in relation to the shipment" and that plaintiffs "have plausibly stated claims for negligent hiring and vicarious liability."  Doc. 3 at 81.  Both the motor-carrier and broker-liability theories thus remain in active dispute.

## II. The *Montgomery* Decision and the Stay of the Underlying Action

Resolution of J.B. Hunt's potential liability in the Underlying Action has been further complicated, and indefinitely deferred, by the United States Supreme Court's pending decision in *Montgomery v. Caribe Transport II, LLC*, 146 S. Ct. 79 (2025).  In *Montgomery*, the Supreme Court granted certiorari to resolve a split among the federal circuits as to whether state-law negligence claims against entities that contract with motor carriers to transport freight are preempted under the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1), or fall within the safety exception in 49 U.S.C. § 14501(c)(2)(A).

The circuits are sharply divided.  The Seventh and Eleventh Circuits have held that negligent-selection claims against brokers are preempted by the FAAAA.  *See Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 464 (7th Cir. 2023); *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65

F.4th 1261, 1271–72 (11th Cir. 2023). The Sixth and Ninth Circuits have held the opposite—that such claims fall within the FAAAA's safety exception and are not preempted. *See Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847, 855 (6th Cir. 2025); *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1020 (9th Cir. 2020). The Supreme Court's forthcoming decision may eliminate, or substantially narrow, the theories of liability asserted against J.B. Hunt in the Underlying Action.

Recognizing *Montgomery*'s potentially dispositive impact, J.B. Hunt moved to stay the Underlying Action, representing to the Arizona court that "[o]nce the Supreme Court issues its decision, either Plaintiffs' negligent hiring/broker negligence claim will be extinguished (i.e., preempted under the FAAAA), or the ruling will dictate the scope of issues for dispositive motions and trial proceedings in this case." *Chrystal Gee et al. v. J.B. Hunt Transport Inc. et al.*, No. 3:24-cv-8064-SMM, Doc. 167 at 3 (D. Ariz. Jan. 20, 2026). The Arizona court granted the stay, finding that *Montgomery* "may address vicarious liability claims more broadly and potentially provide controlling guidance on all of Plaintiffs' claims against Defendant JB Hunt[,]" including those relating to J.B. Hunt's alleged conduct as a motor carrier. *Id.*, Doc. 176 at 3 (D. Ariz. Feb. 9, 2026). As of this filing, the Underlying Action remains stayed, with no pending dispositive motion, no developed factual record on liability, and no timeline for resolution.

### III. The Policy and Its Relevant Provisions

J.B. Hunt is the insured under the Policy and Underwriters are the insurers. *See* Doc. 3 at 1 (¶ 5). The sole coverage provision at issue in this case is Clause 82 of the Policy, which provides in pertinent part: "This policy insures you for liabilities arising from your service as a transportation broker where such service includes the arrangement for the transportation of cargo on a public road in the USA or Canada by a motor carrier which you hire." Doc. 3 at 54 (Policy,

Clause 82(A)). Clause 82 provides a $5,000,000 per occurrence limit in excess of a $2,000,000 deductible. Doc. 3 at 12. Clause 82(C) further provides that "[t]he insurance provided by this Coverage Form will not act as a substitute for any compulsory 'auto' insurance" and that Underwriters "do not insure the hired motor carrier for any limit either in addition to, or in excess of, its automobile liability insurance." Doc. 3 at 54 (Policy, Clause 82(C)).

Whether J.B. Hunt's liability, if any, arises from its "service as a transportation broker" in arranging transport by Borderlanders—or instead from conduct constituting motor-carrier activity, statutory employment, or assumption of carrier-type operational control—is a mixed question of fact and law that remains unresolved in the Underlying Action and is central to Underwriters' coverage analysis. *Chrystal Gee et al. v. J.B. Hunt Transport Inc. et al.*, No. 3:24-cv-8064-SMM, Doc. 176 (D. Ariz. Feb. 9, 2026). Underwriters have denied coverage to the extent J.B. Hunt's liability is based on its having acted, or being deemed to have acted, as a motor carrier. Doc. 3 at 90. As to potential broker-based liability under Clause 82, Underwriters have reserved their rights, explaining that any coverage obligation depends on whether liability is ultimately imposed for broker services and on how the underlying claims are resolved. Doc. 3 at 90.

## ARGUMENT

This Court should exercise its discretion to decline declaratory jurisdiction under the Declaratory Judgment Act. The six-factor test adopted by the Eighth Circuit in *Detco* compels that result here, where the underlying liability remains unresolved and stayed, and the motor-carrier/broker question, a question central to the coverage dispute at issue in this case, has not been determined.

Here are the possibilities. On the one hand, if the Supreme Court eliminates broker liability in *Montgomery* under the FAAAA, the coverage dispute between the parties narrows to whether

the Policy provides coverage for the remaining vicarious liability claims in the Underlying Case. If not, then Underwriters' denial of coverage for those claims should be upheld. On the other hand, if the Supreme Court decides that FAAAA preemption does not shield transportation brokers from liability, then the stay in the Underlying Action will be lifted, and the Arizona court will be poised to decide what role J.B. Hunt played in the underlying dispute, that is either as motor carrier or as transportation broker. Thus, even if the decision in *Montgomery* sustains broker liability, coverage is not automatic. For example, if the plaintiffs in the Underlying Action establish liability against J.B. Hunt only because it acted like a motor carrier (vicarious liability), this coverage dispute will proceed on those narrow grounds. But, if the plaintiffs in the Underlying Action establish liability against J.B. Hunt only on the broker liability claims (negligent hiring and supervision), then Underwriters will be in a better position to reevaluate their reservation of rights. In any event, a decision on the merits in this case before the Underlying Action concludes would necessarily involve guesswork by this Court as to the probable outcome of the Underlying Action, which, for the following reasons, is an avoidable, inadvisable, and inappropriate result in the circumstances.

The Declaratory Judgment Act provides that federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration[,]" not that they *must*. 28 U.S.C. § 2201(a) (emphasis added). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). Thus, this Court has "discretion to decide whether to entertain declaratory judgment actions." *BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995).

In *Detco,* the Eighth Circuit addressed the scope of a federal district court's discretion to decline jurisdiction over a declaratory judgment action when no parallel state court proceeding

6

exists. 426 F.3d at 998. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id*. at 997 (citation modified). To assess the advisability of exercising declaratory jurisdiction in circumstances similar to the one here, the Court of Appeals adopted a six-factor test, drawn from *Aetna Casualty & Surety Co. v. Ind-Com Electric Co.*, 139 F.3d 419, 422 (4th Cir. 1998), to determine whether a district court should decline to exercise jurisdiction over a declaratory judgment action where there is no parallel action pending. 426 F.3d at 998.

The relevant factors are: "(1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (5) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'; and (6) whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' . . . ." *Detco*, 426 F.3d at 998 (citation modified) (citing *Aetna Casualty & Surety Co.,* 139 F.3d at 422); *see also Safeco*, 2021 WL 2462281, at *3. For this Court's analysis, "no one factor controls, no magic number of factors must be satisfied, and different factors may take on greater or lesser importance in any individual case." *West Bend Mut. Ins. Co. v. Dakota Red Corp.*, No. 3:24-cv-00009-RGE, 2024 WL 6991665, at *6 (S.D. Iowa Oct. 9, 2024) (citing *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 972 (8th Cir. 2013)).

*Travelers Property Casualty Co. of America v. Harleysville Worcester Insurance Co.*, 685 F. Supp. 3d 187 (S.D.N.Y. 2023), is instructive. There, applying substantially the same factors set out in *Detco*, the court addressed whether to exercise declaratory jurisdiction over a no-duty-to-indemnify claim while the underlying personal injury action remained pending. *Id*. at 213-16. The reasons for declining jurisdiction here are much stronger than *Worcester Insurance Co*. In that case, cross-motions for summary judgment were at least pending in the underlying action, providing some factual record on which to assess liability. Here, the Underlying Action is *stayed*— at J.B. Hunt's own request—and there is no pending dispositive motion, no factual record on liability, and no timeline for resolution. Although the court in *Worcester Insurance Co*. found that subject-matter jurisdiction existed, it nonetheless concluded that it was not "necessarily prudent to exercise" that jurisdiction and declined to rule on indemnity. *Id.* at 215–16. The court held that any ruling on indemnity should await the resolution of the underlying action. *Id.* at 217. Under *Detco*, and considering the court's analysis in *Worcester Insurance Co.*, all relevant factors point toward dismissal without prejudice or, at minimum, a stay.

First, a declaratory judgment will not serve a useful purpose in clarifying the legal relations at issue. The central question in the Underlying Action—whether J.B. Hunt's liability, if any, arises from its service as a "transportation broker" under Clause 82 of the Policy or from conduct constituting motor-carrier activity—remains entirely unresolved and stayed. And the Supreme Court's pending decision in *Montgomery* may fundamentally reshape the liability landscape. If *Montgomery* eliminates broker liability through FAAAA preemption, the coverage dispute narrows to a single issue—whether Clause 82 covers motor-carrier liability—a question Underwriters have already addressed by denying coverage on that basis. If *Montgomery* sustains broker liability, the case will proceed to determine what role J.B. Hunt actually played (motor carrier or broker) and

whether J.B. Hunt's liability, if any, arises from broker services. In either scenario, a declaratory ruling now would not "clarify" coverage obligations because the predicate facts on which coverage depends have not been established. *See Detco*, 426 F.3d at 999 (first factor favors exercising jurisdiction only where the declaratory judgment would actually "clarify and settle" the legal relations at issue).

Second, a declaratory judgment will not terminate the controversy or afford relief from uncertainty. If J.B. Hunt is not found liable in the Underlying Action, this coverage case disappears entirely. If the Supreme Court's decision in *Montgomery* alters or narrows the theories of liability available against J.B. Hunt, the contours of any potential coverage dispute may change materially. And even if broker liability is sustained, and liability is ultimately imposed, Underwriters have not denied broker-based coverage under Clause 82 of the Policy. Doc. 3 at 90. They have simply reserved their rights, explaining that any coverage obligation depends on whether liability is ultimately imposed for broker services and on how the underlying claims are resolved. Doc. 3 at 90. A ruling now would therefore resolve nothing; it would merely substitute one form of uncertainty for another because no judgment has been entered, no settlement has been reached, and no damages have been fixed in the Underlying Action. *See Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.*, 617 F.3d 1040, 1044 n.4 (8th Cir. 2010) (indemnity issue mooted where underlying action was dismissed and insured suffered no damages). As the court did in *Worcester Ins. Co.*, this Court should also find that a ruling on indemnity "would in no way finalize the controversy or settle the underlying legal issues" while the Underlying Action remains pending. 685 F. Supp. 3d at 216.

Moreover, even if liability were ultimately established in the Underlying Action, a declaratory ruling now still would not meaningfully clarify the parties' rights because any

indemnity obligation would arise only if and when the Policy attaches – an issue that depends on satisfaction of additional conditions, including exhaustion of applicable retentions and underlying insurance. *See* Doc. 3 at 82 (discussing J.B. Hunt's self-insured retention, its primary policy, and other insurance applicable to the claims in the Underlying Action).

Third, no countervailing interest favors resolution in another forum. This factor is neutral. There is no pending state court action raising the coverage issues, and no state interest in having those issues decided elsewhere. *See Safeco Ins. Co.*, No. 5:21-cv-5034-TLB, 2021 WL 2462281, at *4 (finding "the Court sees nothing in the record to indicate that the state has an interest in having the coverage issues decided in state court"). But the neutrality of this factor does not overcome the strong considerations favoring dismissal. Indeed, the absence of any forum considering the coverage issues here underscores that this action is premature because the predicate questions of liability must be resolved in Arizona before any coverage analysis can meaningfully proceed.

Fourth, the issues raised in this action can more efficiently be resolved after the Underlying Action proceeds. Judicial efficiency strongly favors declining jurisdiction here. Whether J.B. Hunt acted as a "transportation broker" in arranging carriage by Borderlanders, or instead assumed operational control as a motor carrier, is a mixed question of fact and law that the Arizona court has the duty (not the discretion) to decide. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.") (citations omitted). That determination is the linchpin of coverage under Clause 82 of the Policy. If this Court proceeds, it will be forced to adjudicate indemnity obligations based on hypothetical liability scenarios that may never materialize. The most efficient course is to await the resolution of the Underlying Action, which

10

will establish whether there is any liability to insure against and, if so, on what theory. As the court in *Worcester Insurance* recognized, "courts regularly require the existence of liability before exercising DJA discretion over indemnity issues." 685 F. Supp. 3d at 217.

Fifth, exercising jurisdiction risks unnecessary entanglement between coordinate federal courts. While "[i]t is unclear what discovery disputes, trial management considerations, or ultimate factual determinations might come into play[;] . . . it is clear they will be similar in both actions and the potential for entanglement or inconsistent rulings exists." *Dakota Red Corp.*, 2024 WL 6991665, at *11. Recognizing that the Supreme Court's upcoming decision in *Montgomery* could materially affect J.B. Hunt's exposure to liability, the Arizona court has stayed proceedings in the Underlying Action. And regardless of the outcome in *Montgomery*, the Arizona court must still decide the mixed questions of law and fact concerning J.B. Hunt's role—broker or motor carrier—that are central to the coverage analysis here. Issuing a declaratory ruling on indemnity in this Court would effectively require this Court to assume the answer to questions that the Arizona court has the duty to decide. *See American Home Assur. Co. v. Pope*, 487 F.3d 590, 603 (8th Cir. 2007) (affirming dismissal under *Detco* factors because "it [was] reasonable to assume that" the courts considering the underlying claims "have a closer connection to both the facts and law relevant to" the litigation); *Worcester Ins.*, 685 F. Supp. 3d at 216 (declining indemnity jurisdiction in part because ruling "would intrude on the [other] court's role in determining liability" and "could create *res judicata* problems").

Even though the Underlying Action involves tort liability and this action involves contract interpretation, the factual overlap is significant. Whether J.B. Hunt acted as a broker arranging transportation or as a motor carrier exercising operational control is the primary question on which liability and coverage are likely to turn. Unlike *Detco*, this is not a case where the coverage

question can be resolved independently of the liability determination.  *See* 426 F.3d at 999 (fifth factor did not weigh against exercising jurisdiction because "[a]ny common issues do not hinge on the same questions of law").  And like in *Pope*, this Court should decline jurisdiction over questions that are better and more efficiently answered in the Underlying Action.  487 F.3d at 602-03.

Finally, J.B. Hunt's litigation posture raises significant procedural-fencing concerns.  J.B. Hunt's own conduct warrants scrutiny under this factor.  In the Underlying Action, J.B. Hunt successfully moved to stay all proceedings, representing to the Arizona court that the Supreme Court's forthcoming decision in *Montgomery* could "extinguish" the brokerage-negligence claim in its entirety.  *Chrystal Gee et al. v. J.B. Hunt Transport Inc. et al.*, No. 3:24-cv-8064-SMM, Doc. 167 at 3 (D. Ariz. Jan. 20, 2026).  Having convinced the Arizona court that liability must wait, J.B. Hunt then filed this action asking a different federal court to resolve a coverage question that depends on the stayed liability determination.  This is precisely the type of forum manipulation that *Detco's* sixth factor is designed to address.  J.B. Hunt cannot freeze liability in one federal court while asking another to decide who must pay for a possibly nonexistent liability.  *See Aetna Cas. & Sur. Co.*, 139 F.3d at 422 (sixth factor addresses whether a party uses declaratory relief "to provide another forum" or gain a procedural advantage).

Accordingly, this Court should exercise its discretion to dismiss J.B. Hunt's complaint without prejudice or, at a minimum, stay proceedings in this case until resolution of the predicate liability issues in the Underlying Action, including the motor-carrier/broker determination.

## CONCLUSION

For these reasons, J.B. Hunt's complaint for declaratory judgment should be dismissed or, alternatively, this case should be stayed pending the outcome of the Underlying Action.

R. Ryan Younger, Esq. (Ark. Bar No. 2008209)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
(501) 379-1700 Telephone
(501) 379-1701 Facsimile
ryounger@qgtlaw.com

and

Helen Franzese, Esq.
FORAN GLENNON (UK) LLP
10 Lloyd's Avenue – First Floor
London
EC3N 3AJ
England
+44 (0) 75 3889 7547 Telephone
hfranzese@foranglennon.co.uk

Anna Manalaysay, Esq.
FORAN GLENNON LLP
40 Wall Street, 54th Floor
New York, New York 10005
(212) 257-7113 Telephone
amanalaysay@fgpppr.com

*Attorneys for Defendants*